**Francis P. BURNS, Jr., Petitioner**

v.

**PUBLIC SCHOOL EMPLOYEES'
RETIREMENT BOARD,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 11, 2004.

Decided July 15, 2004.

James A. Nettleton, Jr., Lancaster, for petitioner.

David W. Speck, Harrisburg, for respondent.

BEFORE: COHN, Judge, and SIMPSON, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge SIMPSON.

Francis P. Burns, Jr. appeals from the order of the Public School Employees Retirement Board (Board) denying him a disability annuity due to his failure to apply within the statutorily mandated period. Burns asserts the Board denied him various constitutional protections. We affirm.

Burns was employed as a schoolteacher with Manheim Township School District

(School District) for 25 years. Hearing Examiner Finding of Fact (F.F.) No. 1. Burns was diagnosed with Multiple Sclerosis in 1993 and depression in 1995. F.F. No. 3. Burns' condition progressively worsened, causing him to become incapable of performing his duties for the School District. F.F. No. 4.

A few months before his last day of work in 1999, Burns met with a counselor, Karon Jones (Counselor), from the Public School Employees' Retirement System (PSERS) to discuss his retirement alternatives. F.F. No. 11. At that meeting, Counselor gave Burns estimates of his early retirement benefits and disability benefits. *Id.* Counselor and Burns completed Burns' disability annuity application, with the exception of those portions required to be filled out by the School District and Burns' doctor. F.F. No. 12. Burns was given the application to take to the School District and his doctor to complete. Reproduced Record (R.R.) at 98a–99a.

Counselor specifically informed Burns of the requirement that he apply for disability annuity within two years of his last pay day. F.F. No. 14; R.R. at 98a. Additionally, PSERS sent several newsletters to its members containing that same information. F.F. No. 16. Burns' final contribution to PSERS was made in June 1999, after which PSERS deemed Burns an inactive member. F.F. No. 17.

For reasons unclear in the record, Burns did not return his disability annuity application to PSERS within two years. He met with Counselor again on November 16, 2001, accompanied by his daughter, who is his attorney-in-fact. F.F. No. 18.

Counselor informed them Burns became ineligible for disability annuity because he missed the two-year time frame. R.R. at 100a. Counselor helped Burns fill out a different application for a retirement annuity. *Id.* Burns applied for and ultimately received a retirement annuity. R.R. at 4a.

Burns submitted his disability annuity application to PSERS on November 28, 2001. F.F. No. 19. The application was accompanied by a Power of Attorney in favor of Burns' daughter dated more than a year before, August 5, 2000. *Id.*

PSERS denied Burns' disability annuity application because it was not received by June 2001, within two years of Burns' last contribution to PSERS. F.F. No. 23. Burns appealed, and a hearing was held. The Hearing Examiner recommended Burns' disability annuity application be denied, and the Board adopted that recommendation.

Burns appealed to this Court,[1] arguing: 1) the Public School Employees' Retirement Code (Code)[2] is unconstitutionally vague; 2) The Code violates equal protection; 3) Burns' due process rights were violated; and 4) the Board's denial of Burns' application for disability annuity was an unlawful impairment of contract.

### I.

■ Burns first argues the varying definitions of "vestee", "member", "annuitant", and "disability annuitant" as used in the Code are collectively so ambiguous as to render the Code unconstitutionally vague.

Burns asserts he is a "vestee" as defined in the Code.[3] As a vestee he claims qualification to apply for a disability annuity

---

1. Our review in an appeal from a state agency adjudication is limited to a determination of whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are supported by substantial evidence. *Trakes v. Pub. Sch. Employes' Ret. Sys.*, 768 A.2d 357 (Pa.Cmwlth.2001).

2. 24 Pa.C.S. §§ 8102–8535.

3. "A member with five or more eligibility points who has terminated school service, has left his accumulated deductions in the fund and is deferring filing of an application for receipt of an annuity." 24 Pa.C.S. § 8102.

under various sections of the Code. First, he relies on Section 8345, which permits a vestee to apply for, "[s]ome other benefit which shall be certified by the actuary to be actuarially equivalent to the maximum single life annuity...." 24 Pa.C.S. § 8345. Burns next asserts he is entitled to a disability annuity as a vestee under Section 8507(i), which states, once a member is a vestee, "his annuity will become effective as of the date an application is filed with the board or the date designated on the application whichever is later." 24 Pa.C.S. § 8507(i). Third, Burns relies on Section 8307(b), which permits certain vestees, active members and, inactive members to apply for an early annuity. 24 Pa.C.S. § 8307(b). Burns asserts, since both sub-sections (b) (early annuity) and (c) (disability annuity) use the term "member", which by definition includes vestees, he should be entitled to apply for a disability annuity as a vestee. Burns alleges these sections together create an ambiguity rendering the Code impermissibly confusing.[4]

### a. § 8307(c) Disability Annuity

■ Burns' arguments ignore the clear language of Section 8307(c),[5] which defines who may apply for a disability annuity. That provision uses the defined terms "active or inactive member." The provision does not include "vestees" among those eligible to apply. Accordingly, only an "active member" or an "inactive member"

4. Burns asserts his due process rights under Pennsylvania Constitution Article 1, Section 9 were violated. Generally, due process protections under both the Federal Constitution and the Pennsylvania Constitution are coextensive. *See Com. v. Scher*, 569 Pa. 284, 803 A.2d 1204 (2002)(plurality); *Com. v. Kratsas*, 564 Pa. 36, 764 A.2d 20 (2001). *See generally* Ken Gormley, Jeffrey Bauman, Joel Fishman & Leslie Kozler, *The Pennsylvania Constitution*, §§ 32.6[c],32.6[h] at 775, 778–79 (2004).

5. Section 8307(c) states,

may apply for such benefits. An "active member" is,

> A school employee for whom pickup contributions are being made to the fund or for whom such contributions otherwise required for current school service are not being made solely by reason of any provision of this part relating to the limitations under section 401(a)(17) or 415(b) of the Internal Revenue Code of 1986.

24 Pa.C.S. § 8102 (citations omitted). An "inactive member" is,

> A member for whom no pickup contributions are being made, except in the case of an active member for whom such contributions otherwise required for current school service are not being made solely by reason of any provision of this part relating to the limitations under section 401(a)(17) or 415(b) of the Internal Revenue Code of 1986 ... who has accumulated deductions standing to his credit in the fund and for whom contributions have been made within the last two school years or a multiple service member who is active in the State Employees' Retirement System.

24 Pa.C.S. § 8102 (citations omitted).

This Court previously addressed the issue of whether a vestee may apply for disability annuity under § 8307(c) in *Trakes v. Pub. Sch. Employes' Ret. Sys.*, 768 A.2d 357 (Pa.Cmwlth.2001). In *Trakes*, this Court stated,

> *An active or inactive member* who has credit for at least five years of service shall, upon filing of a proper application, be entitled to a disability annuity if he becomes mentally or physically incapable of continuing to perform the duties for which he is employed and qualifies for an annuity in accordance with the provisions of section 8505(c)(1) (relating to duties of board regarding applications and elections of members).
>
> 24 Pa.C.S. § 8307(c) (emphasis added).

[R]eading section § 8307(c) of the Retirement Code in conjunction with the applicable statutory definitions we conclude that the General Assembly intended that in order to be eligible for disability benefits a PSERS member must be either: 1) a school employee that is actively working for regular remuneration and for whom the employer is making regular or joint contributions to the fund for current service; or 2) a member who is not actively working or receiving regular remuneration but for whom regular or joint contributions have been made to the fund within the last two school years.

*Id.* at 362. In *Trakes,* we specifically concluded that a vestee is not entitled to apply for a disability annuity.

Considering both the plain language of the statute and the case interpreting the provision in question, there is no support for Burns' position.

■■■■ Moreover, Burns' argument that the disability annuity provisions of the Code are unconstitutionally vague is without merit. A statute is presumed to be constitutional, and a person challenging the constitutionality of a statute has a heavy burden of persuasion. *South Union Township v. Dep't of Envtl. Prot.,* 839 A.2d 1179 (Pa.Cmwlth.2003). A statute is only found to be unconstitutionally vague when "persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Commonwealth v. Cotto,* 562 Pa. 32, 37, 753 A.2d 217, 220 (2000) (citations omitted). A statute is not uncon-

stitutionally vague if, "the terms, when read in context, are sufficiently specific that they are not subject to arbitrary and discriminatory application." *Id.* at 38, 753 A.2d at 220.

The Code provisions for eligibility to apply for disability annuities are sufficiently specific to pass constitutional muster. Similarly, the definitions of "active member" and "inactive member" inform an ordinary person of their meanings. The fact that the Code grants certain benefits to vestees and certain other rights to active and inactive members does not make the Code unconstitutionally vague. Burns' assertion to the contrary is without merit.

**b. § 8345 Member's options**

■■■■ As noted above, § 8345 permits a vestee to apply for, "[s]ome other benefit which shall be certified by the actuary to be actuarially equivalent to the maximum single life annuity...." 24 Pa.C.S. § 8345(a)(4).[6] Burns argues he is entitled to disability benefits as a vestee based on this language. Burns' argument fails, however, because he does not offer proof that a disability annuity would be "actuarially equivalent" to the benefits identified in this statutory provision. Moreover, as discussed, status as a vestee does not entitle Burns to apply for a disability annuity.

**c. § 8507(i) Failure to apply for annuity**

Burns' reliance on § 8507(i) is similarly misplaced. Section 8507 discusses what happens when a member is deemed to vest. It does not discuss disability benefits.[7] At best, § 8507 establishes Burns as

---

6. Section 8345(a) states,

 Any vestee with five or more eligibility points or any other eligible member upon termination of school service who has not withdrawn his accumulated deductions ... may apply for and elect to receive ... (4) **Option 4.**—Some other benefit which shall be certified by the actuary to be actuarially

equivalent to the maximum single life annuity....

7. Section 8507(i) states,

 **Failure to apply for annuity.**—If a member is eligible to receive an annuity and does not file a proper application within 90 days of termination of service, he shall be

a vestee, which, as discussed, does not make him eligible for a disability annuity.

### d. § 8307(b) Withdrawal annuity

Although Burns tries to raise an ambiguity by comparing this provision, relating to early annuities, with the provision for disability annuities, his attempt is unsuccessful.[8] Each provision clearly identifies those who may apply. Moreover, eligibility for an early annuity is irrelevant to this case.

Although we are sympathetic to Burns' situation, for the foregoing reasons, we must reject Burns' argument regarding vagueness.

### II.

■ Burns next argues that, because persons applying for disability annuities are subject to a two-year limitation period while no such limitation pertains to those applying for retirement benefits, the two-year limitation period violates equal protection.[9] Because the two-year limitation period applies only to persons applying for disability annuities, Burns argues the statute is subject to a strict scrutiny analysis.

■ The essence of an equal protection claim is that persons in similar circumstances must be treated similarly. *Uniontown Newspapers, Inc. v. Roberts,* 576 Pa. 231, 839 A.2d 185 (2003). However, a state may recognize differences and create classifications so long as all similarly situated persons are treated alike. *Myers v. Ridge,* 712 A.2d 791 (Pa.Cmwlth. 1998). Where the challenged statute does not burden fundamental rights and does not implicate a suspect or quasi-suspect classification, it survives equal protection analysis if it is rationally related to a legitimate government interest. *Small v. Horn,* 554 Pa. 600, 722 A.2d 664 (1998).

■ Here, Burns does not argue he is being treated differently than any other similarly situated person. *All* persons who wish to apply for disability annuity are subject to the two-year limitation period. Because a retirement annuity often has a value different than a disability annuity, it is not facially unconstitutional to treat applicants for each benefit differently.

■ Moreover, the two-year limitation period does not impair a fundamental right or create a suspect or quasi-suspect class. This Court previously held, in the context of workers' compensation, the right to disability benefits is not fundamental. *Guess v. Workmen's Comp. Appeal Bd. (Link Belt/FMC Corp.),* 77 Pa.Cmwlth.319, 466 A.2d 1098 (1983). Further, disabled persons are not considered a suspect[10] or quasi-suspect[11] class. *Id.*

Under Burns' argument, the challenged classification arises not from the presence or absence of a disability, but rather from

---

deemed to have elected to vest, and his annuity will become effective as of the date an application is filed with the board or the date designated on the application whichever is later.

8. Section 8307(b) states, "A vestee with five or more eligibility points or an active or inactive member who terminates school service having five or more eligibility points shall, upon filing a proper application, be entitled to receive an early annuity."

9. Burns relies on both the Pennsylvania Constitution, Article 1, Section 26, and the equal

protection clause of the United States Constitution. Our analysis of both federal and state equality protections proceeds under the same standards. *See Harrisburg School Dist. v. Zogby,* 574 Pa. 121, 828 A.2d 1079 (2003). *See generally* Gormley, Bauman, Fishman & Kozler, *supra* note 4, § 31.2 at 732–34.

10. Suspect classes are race; national origin; and, for purposes of state laws, alienage. *Small,* 554 Pa. at 615 n. 14, 722 A.2d at 672 n. 14.

11. Quasi-suspect classes are gender and legitimacy. *Id.*

the passage of time after the last employer contribution into the system. In this sense, the challenged distinction is a timeliness condition similar to a limitation of action provision.

▮▮▮▮ To be sustained on equal protection grounds, a limitation period must be both: 1) sufficiently long in duration to present a reasonable opportunity for those with an interest to assert the claim; and 2) be substantially related to the Commonwealth's interest in avoiding litigating stale or fraudulent claims. *Astemborski v. Susmarski,* 502 Pa. 409, 466 A.2d 1018 (1983). Statutes of limitation pertain to remedies and do not impair fundamental rights. *Noetzel v. Glasgow, Inc.,* 338 Pa.Super. 458, 487 A.2d 1372 (1985).

The two-year limitation is long enough to present Burns with a reasonable opportunity to assert his claim, particularly here, where he met with Counselor a few months before the two-year limitation period began. There is no argument to the contrary.

Also, the limitation period is substantially related to the Commonwealth's interest in avoiding litigation of stale or fraudulent claims. If members were permitted to apply for disability annuities more than two years after their last contribution to PSERS, difficulties could arise in proving the disability due to loss of evidence, death or disappearance of witnesses, or fading memories. *See Astemborski,* 502 Pa. at 417, 466 A.2d at 1022. Considering the foregoing discussion, we conclude the two-year limitation period does not violate equal protection either facially or as applied.[12]

## III.

▮▮▮▮ Burns next argues his due process rights were violated because PSERS failed to follow the mandate of § 8502(g), which requires, "In the event the employer fails to comply with the procedures as mandated in section 8506 ... the board shall perform such duties...." 24 Pa.C.S. § 8502(g). Section 8506(i) requires that,

The employer shall, in the case of any member terminating school service, advise such member in writing of any benefits to which he may be entitled under the provisions of this part and *shall have the member prepare,* on or before the date of termination of school service, one of the following three forms ...

...

(3) An application for an immediate annuity....

24 Pa.C.S. § 8506(i) (emphasis added). It is undisputed that the School District did not have Burns prepare his application for disability annuity.

Burns asserts PSERS also failed to have him prepare the application for his disability benefits because, although Counselor met with him and helped him prepare the application, PSERS did not follow up and ensure he completed the remaining portions of the application (those to be filled out by the School District and his doctor) and ensure he filed the application. Citing two condemnation cases, *Curtis v. Redevelopment Auth. of the City of Phila.,* 482 Pa. 58, 393 A.2d 377 (1978) and *Pagni v. Commonwealth,* 179 Pa.Super. 213, 116 A.2d 294 (1955), Burns asserts that an agency's failure to follow legislative mandates is a violation of due process.

Burns' argument is without merit. The two condemnation cases he cites are not

---

**12.** We note that a similar result was reached by the Third Circuit Court of Appeals in *Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548 (3d Cir.1985), where it concluded a two-year statute of limitations for survival actions did not violate equal protection. We are persuaded by this holding.

persuasive for the proposition that an agency's failure to follow a legislative mandate violates due process; rather, they discuss an agency's failure to give sufficient notice in the context of due process.

 A due process analysis requires consideration of: 1) the private interest that will be affected by the official action; 2) the risk of an improper deprivation of that interest under the procedures followed; and 3) the fiscal and administrative burdens additional procedures would entail. *South Union Township*, 839 A.2d at 1186. Due process is flexible, and requires protections tailored to the particular situation. *Id.*

Here, Burns' argument meets the first part of the test, because his interest in receiving disability benefits is significant. However, his argument fails on the second and third portions of the test.

We disagree that PSERS' procedures create a significant risk of improper deprivation of Burns' interest in applying for a disability annuity. Burns was informed of the two-year limitation on filing his application for disability benefits. Burns was also informed of that requirement by several newsletters PSERS sent to its members. PSERS, through Counselor, helped Burns prepare his application for disability benefits and gave him specific instructions for completing the application.

The plain language of the Code places ultimate responsibility for preparation of the application on the member seeking benefits. The Code states the employer (or PSERS, if the employer does not do so) shall "have the member prepare" the application. PSERS followed reasonable

procedures to ensure Burns had the tools to complete his application in a timely manner.

We also conclude further requirements could be unduly burdensome on PSERS. Thus, we decline to require retirement counselors to intervene between an applicant and his physician so that proof of disability is timely submitted.

## IV.

 Finally, Burns asserts PSERS' denial of his application for disability benefits is an unlawful impairment of contract under Article 1, § 17 of the Pennsylvania Constitution.[13] This argument also lacks merit.

 The Pennsylvania Constitution states, "No *ex post facto* law, nor any law impairing the obligation of contracts ... shall be passed." Pa. Const. Art. 1, § 17. An impairment of contract claim requires the person asserting it to,

> [D]emonstrate that a change in state law has operated as a substantial impairment of a contractual relationship.... Contract clause analysis involves three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial.

*South Union Township*, 839 A.2d at 1188. Further, the impairment of contracts clause is not violated by a judicial determination, but only by an enactment by the legislature. *Mariniello v. Shell Oil Co.*, 511 F.2d 853, 859 (3rd Cir.1975).

Here, it is undisputed that Burns has a contract with the Commonwealth under the retirement system.[14] However, Burns

---

**13.** Generally, our review of a challenge raising the impairment of contracts provision of the Pennsylvania Constitution depends on the federal standard. *See Parsonese v. Midland National Ins. Co.*, 550 Pa. 423, 706 A.2d 814 (1998). *See generally,* Gormley, Bauman,

Fishman & Kozler, *supra* note 4, § 20.3[b] at 586–89.

**14.** *Bowers v. State Employes' Ret. Bd.*, 29 Pa. Cmwlth. 561, 371 A.2d 1040 (1977).

does not identify any change in the law that impairs that contractual relationship. Instead, he identifies PSERS' determination as an impairment. Where Burns identifies no change in the law but only a quasi-judicial determination by PSERS as an impairment, no unconstitutional impairment of contract is stated.[15]

For all the foregoing reasons, we affirm the order of the Board denying Burns disability benefits.

## ORDER

AND NOW, this 15th day of July, 2004, the order of the Public School Employees' Retirement Board in the above-captioned matter is affirmed.

---

15. Burns also makes the preemptive argument that, if we find in his favor, the Board should not be permitted to rely on the theory of notice prejudice to deny his claim. Because we are not finding in his favor, we need not address this issue.